**Commonwealth v. Eckert**

*William F. Morgan,* District Attorney for Commonwealth.

*John R. Fernan,* for defendant.

WOLFE, P. J., September 12, 1973.—According to an eyewitness, defendant, while operating his vehicle southerly on Market Street in the Borough of Warren on June 3, 1973, at about 12:30 a. m., drove it into the rear of a legally parked vehicle in the parking lane.

The police were summoned and defendant was arrested on view, without a warrant, and charged with

driving under the influence of intoxicating liquor. Defendant was transported to the borough police station and, without defendant's presence, the arresting officer proceeded to obtain a warrant for his arrest from a magistrate and again arrested defendant for the second time for the same offense. Thereafter, defendant was requested to take a breathalyzer examination and he refused.

The arresting officer admits he did not actually observe defendant driving his vehicle on Market Street prior to the collision and, therefore, defendant now asks us to dismiss the indictment and to suppress defendant's refusal to take the breathalyzer examination so that the results of the examination cannot be used against him in any criminal proceeding.

Defendant rests his request on the hornbook law that: "A police officer may only make a warrantless arrest for a misdemeanor 'where he has probable cause to believe that a misdemeanor is being committed in his presence'": Commonwealth v. Reeves, 223 Pa. Superior Ct. 51 (1972).

Further, it is his argument the arrest with the warrant was obtained without probable cause from the issuing magistrate because the criminal complaint was insufficient in providing and setting forth the underlying circumstances from which the magistrate could reasonably and independently conclude defendant was operating under the influence of intoxicating liquor.

Because of our ruling on the first reason, we need not discuss the second one.

The narrow issue presented for decision is the question whether defendant was operating his vehicle while under the influence and thereby committed a misdemeanor when the officer arrived on the scene. It was his testimony that defendant was seated behind

the wheel and attempted to drive the vehicle while the motor was running with steam coming from the radiator and the fan clanging against it. Defendant appeared to the officer to be attempting to drive and he requested defendant to turn the ignition off, which defendant refused to do, stating he wanted to leave and attempted to maneuver the levers. The officer turned the ignition off, whereupon defendant grabbed him by the collar and was combative towards the officer, whereupon he was placed under arrest. Defendant, according to the officer, smelled of a strong odor of alcohol, his eyes were glassy, his speech slurred, he was over-aggressive and appeared to have all the aspects of being under the influence.

Defendant did not elect to testify on his own behalf; however, he presented a tape recording taken by his counsel at the preliminary hearing which was placed in evidence to contradict the officer that the motor was, in fact, running when he arrived. A witness for the defense testified he had sold the vehicle to him; and, after towing it back to his garage, had inspected the car, which revealed the entire front end assembly was damaged in the amount of $1,700, thus making it inoperable. According to this witness, the shift was locked in drive as the left quarter panel was pushed back against the shift mechanism, but he did acknowledge the vehicle could have run approximately five minutes without water and without damage to the motor.

It is, therefore, defendant's position he was not operating the vehicle at the time of his arrest, and that within the view or presence of the arresting officer, notwithstanding, he was seated behind the wheel thereof because his vehicle was so physically damaged that it was impossible to drive and the motor was not running as the officer testified.

One of the first reported cases on this issue is Commonwealth v. Fox, 17 D. & C. 491 (1932), wherein the court found defendant was not the "operator" as that word is defined in section 102 of The Vehicle Code of May 1, 1929, P. L. 905, which reads substantially as The Vehicle Code of April 29, 1959, P. L. 58, sec. 102, as amended, 75 PS §102, which defines "Operator" as:

"Every natural person who is in actual physical control of a motor vehicle or tractor upon a highway whether or not licensed as an operator under the laws of this Commonwealth."

In Fox, following defendant's arrest for operating under the influence, it was established that, although the engine was running, the drive shaft was broken when defendant was apprehended behind the wheel and was not the operator prior to the immediate breakdown. The court therein held that it was "doubtful if the defendant was the operator of the car within the meaning of the statute" and so held.

In Commonwealth v. Underkoffler, 32 D. & C. 183 (1938), defendant was convicted of attempting to operate his vehicle after he admitted he was under the influence and, while in that condition, he intended to move his truck and placed himself behind the steering wheel but before he could start the engine the officer took him out of it. It was there held it is not necessary that the engine be started.

In Commonwealth v. Hogue, 1 D. & C. 2d 617 (1954), defendant was found guilty while operating under the influence when he entered a vehicle without the knowledge or consent of the owner and without the key for the ignition, and after the vehicle drifted backward into another parked vehicle on the same side of the street, defendant was found slumped over the wheel.

The only appellate court case on this issue is Commonwealth v. Kallus, 212 Pa. Superior Ct. 504 (1968), wherein defendant was found guilty of operating under

the influence when he was apprehended by the police officer when attempting to extricate his vehicle stuck in a snowbank. We therein find the following language:

"We agree with the reasoning of the court below that it is not necessary that the vehicle itself must be in motion but that it is sufficient if the operator is in actual physical control of the movements of either the machinery of the motor vehicle or of the management of the movement of the vehicle itself.

"There is no doubt, in the present case, that the engine was running and that the car was in gear and thus the defendant was in actual control of the machinery of the vehicle. It was through no fault of his that the vehicle itself was not also in motion and had he succeeded in his efforts, the public safety, which the Act was intended to protect, could have been seriously jeopardized."

Thus, it appears that it is now at least settled that the vehicle need not be in motion; however, defendant must have an intent to operate and have taken the vehicle under his control to fulfill that intent. Here, defendant was attempting to operate his vehicle by taking physical control of the levers and steering wheel and expressed that intent to the officer. We do not think defendant has sufficiently contradicted the officer's testimony that the motor was not running to impeach him. The tape recording corroborated the officer's testimony that he turned off the "ignition." It is a fair interpretation that the officer meant thereby that this stopped the motor from running. Further, the eyewitness clearly placed defendant as the operator before the impact; thus, defendant had not merely seated himself in the vehicle after the collision.

We find it difficult to make any real distinction between the case under consideration and that of Kallus. The only distinction we can find is that in

Kallus the vehicle was capable of operating on a highway had defendant extricated it from the snowbank. Here, it may be questionable that the vehicle was able to move on the highway but, nonetheless, in both cases, the vehicle was not, in fact, moving on the highway. The statute does not require movement on the highway but only requires actual physical control of the vehicle upon the highway.

We do not think the law should permit one who, immediately prior to an impact through his own recklessness and carelessness, causes a collision which renders his vehicle inoperable to claim that he was not, in fact, the operator simply because there is not a police officer standing at the scene when the impact occurs. We think the status of the law is that, following such an impact which renders the vehicle inoperable, the operator remaining behind the wheel and attempting to operate it is nonetheless the operator and, as Kallus holds, through no fault of his own it does not move, he should not be exonerated.

## ORDER

And now, September 12, 1973, the motion to dismiss the indictment and to suppress evidence is refused.

Exceptions to defendant.